**McMANIMON, SCOTLAND
& BAUMANN, LLC**
427 Riverview Plaza
Trenton, New Jersey 08611
(609) 695-6070
Andrea Dobin (adobin@msbnj.com)
Michele M. Dudas (mdudas@msbnj.com)
*Counsel to Plaintiff Andrea Dobin, Chapter 7 Trustee*

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>NATIONAL MANAGEMENT & PRESERVATION SERVICES, LLC, d/b/a NATIONAL FIELD NETWORK, LLC,<br><br>           Debtor. | Case No. 18-16859 (CMG)<br><br>Chapter 7<br><br>Honorable Christine M. Gravelle, U.S.B.J. |
| ANDREA DOBIN, Trustee,<br><br>           Plaintiff<br><br>v.<br><br>JONATHAN OGLENSKY, BLAKE EUGENE OGLENSKY, EMMA ROSE OGLENSKY, SOPHIE J. OGLENSKY and RACHEL M. OGLENSKY,<br><br>           Defendants. | Adv. No. 24-____ (CMG) |

**ADVERSARY COMPLAINT TO RECOVER FRAUDULENT
TRANSFERS PURSUANT TO 11 U.S.C. §§ 544 AND 550**

Plaintiff Andrea Dobin, Chapter 7 Trustee ("**Trustee**") in the bankruptcy proceeding of National Management & Preservation Services, LLC, d/b/a National Field Network, Chapter 7 Debtor ("**Debtor**") by and through her counsel, McManimon, Scotland & Baumann, LLC, and by way of Adversary Complaint against Jonathan Oglensky ("**Jonathan**"), Blake Eugene

Oglensky ("**Blake**"), Emma Rose Oglensky ("**Emma**"), Sophie J. Oglensky ("**Sophie**") and Rachel M. Oglensky ("**Rachel**") (where appropriate, Blake, Emma, Sophie and Rachel will be referred to as the "**Children Defendants**") (where appropriate, Jonathan and the Children Defendants will be collectively referred to as the "**Defendants**"), alleges as follows:

## BACKGROUND

1. Jonathan is the husband of Shari Nott (a/k/a Shari Oglensky) ("**Nott**").

2. Upon information and belief, Jonathan and Nott were married in 1995, divorced in 2006, and were remarried in 2018.

3. The Children Defendants are the now-adult children of Nott and Jonathan.

4. The Debtor was in the business of providing default services, including property preservation services, to banks and other institutions.

5. The Debtor was formed in 2009 and since nearly from the inception of the Debtor's business, Nott was responsible for operations of the Debtor, and eventually became its Chief Executive Officer.

6. Nott was given complete control of the Debtor's business and was responsible for all major decisions. Nott's job duties included operations, client services, business development and information technology.

7. During the course of Nott's employment, the Debtor advanced Nott monies for lavish personal expenses, including funds related to the acquisition, renovation and maintenance of vacation homes in the Bahamas, luxury vehicles, including a Thunderbird, multiple Audi vehicles, a specialty Tesla vehicle and a Ford Explorer, to payment of contractors who did personal work for Nott at her various residences and/or other business ventures and credit card payments.

8. Most significantly, the Debtor made an advance to Nott's attorney, Deutch & Associates, LLC, in the amount of $588,414.99 on October 10, 2012.[1] The funds were used for Nott, individually, to purchase the real property located at 3 Abis Place, West Long Branch, New Jersey ("**Abis Property**").

9. The closing on the purchase of the Abis Property by Nott from Sandra Rosen and Ronald B. Rosen for the purchase price of $630,000 was consummated on October 10, 2012. The Deed for Nott's purchase of the Abis Property is of the same date and recorded with the Monmouth County Clerk's Office on November 16, 2012 at Deed Book OR-8981, Page 3152, *et seq*.

10. The majority of the funds, if not all, used by Nott to purchase the Abis Property were advanced by the Debtor.

11. Each of the advances to Nott were documented in the Debtor's books and records as an accounts receivable ("**Accounts Receivable**") due and owing from Nott.

12. Upon information and belief, in or about 2015, the Debtor began experiencing financial difficulties as a result of delayed payment from one of its primary vendors, large receivables from another primary vendor, and other financial obligations of the Debtor, including tax payments.

13. Upon information and belief, in or about January 2017, the Debtor laid off more than twenty-five (25%) percent of its workforce.

14. Upon information and belief, in or about November 2017, the Debtor did a second major layoff, leaving approximately thirty (30) employees operating the business.

---

[1] On August 24, 2012, Nott was advanced $50,000 for a payment to Chamlin, Rosen, Uliano & Witherington, a law firm located in Monmouth County, New Jersey. Upon information and belief, said amount represented the initial deposit for the purchase of the Abis Property.

3

15. In February 2018, All the Right Movers Unlimited, LLC ("**Unlimited**") was formed, with Jonathan listed as the owner of Unlimited.[2] Victor A. Deutch, Esq., Nott's long-time attorney, was listed as its registered agent, until April 6, 2021, when Jonathan was substituted as registered agent.

16. On April 6, 2018 (the "**Petition Date**"), an involuntary Chapter 7 petition was filed against the Debtor under Chapter 7 of the Bankruptcy Code (11 U.S.C. § 101, *et seq.*) in the United States Bankruptcy Court for the District of New Jersey.

17. As of the Petition Date, Nott's salary was approximately $350,000 per year, plus other benefits.

18. In addition to the mounting Accounts Receivables reflecting funds advanced to Nott, according to the Debtor's books and records from January 1, 2016 through the Petition Date, Nott received direct cash payments from the Debtor in excess of $1,400,000.

19. On April 23, 2018, the Debtor filed a Motion to convert the Chapter 7 case to Chapter 11 (Docket No. 13), which was granted by Order entered April 25, 2018 (Docket No. 15).

20. On May 15, 2018, the Debtor filed its Schedules and Statement of Financial Affairs (Docket No. 27).

21. The Schedules are signed by Nott as Chief Executive Officer of the Debtor.

22. On the Statement of Financial Affairs, Question 30, the Debtor disclosed payments to Nott in the total amount of $1,088,517.55, with a description of: "additional compensation above base pay from 2016 through April 2018, incorrectly classified as a loan due

---

[2] After the Debtor was formed, Nott, along with Jack Jaffa ("**Jaffa**"), its managing member, and Christopher Crandell ("**Crandell**"), its Chief Operating Officer, formed various other related entities in which they were owners, including, but not limited to: National Field Network Now, LLC d/b/a All the Right Movers, NFN Investments, LLC, NFN Claims, All the Right Movers, LLC, Trio Solutions, LLC, Commigrate Capital, LLC and Chik-Chak Shack, LLC.

4

to the Debtor on the Debtor's books and records. Should have been classified as an advance against income. The total gross amount paid during the 1 year prior to the filing is $1,088,517.55, but the net amount after repayments totaled $801,727.60."

23. According to an accounting report produced by Nott dated May 8, 2018 relating to the Accounts Receivable, there was a total balance due from Nott to the Debtor in the amount of $1,480,445.21.

24. On or about July 20, 2018, a Creditors Committee ("**Committee**") was formed (Docket No. 64).

25. On September 25, 2018, Nott was deposed by the Committee.

26. On January 28, 2019, the Office of the United States Trustee filed a Motion to convert the Chapter 11 case to Chapter 7 (Docket No. 109), which was granted by Order entered April 2, 2019 (Docket No. 137).

27. On April 3, 2019, Bunce D. Atkinson, Esq. ("**Original Trustee**") was appointed to serve as the Chapter 7 Trustee (Docket Nos. 138 and 139).

28. On July 20, 2020, Plaintiff was appointed as the successor Chapter 7 Trustee to the Original Trustee (Docket Nos. 178 and 179).

29. On December 30, 2020, the Trustee filed an Adversary Complaint against Jaffa, Nott and Crandell, seeking to recover property of the Estate, for avoidance of fraudulent transfers and for related relief at Adv. Pro. No. 20-1648 (CMG) ("**Adversary Proceeding**"). Adv. ECF 1.

30. After extensive delays requested by Nott, trial in the Adversary Proceeding was eventually scheduled for July 12, 2023 ("**Trial Date**"). Along with her professionals, the Trustee appeared on the Trial Date, ready and willing to proceed to trial.

4864-7914-0027, v. 1

31. After lengthy negotiations, Nott agreed to settle the Adversary Proceeding by providing a Consent Judgment in the amount of $1,485,000, representing the amounts due on Accounts Receivable being pursued by the Trustee ("**Settlement**").

32. A motion to approve the Settlement was granted by Order entered December 12, 2023. [ECF 345].

33. The Consent Judgment was entered on the docket on December 21, 2023. [ECF 348].

34. No portion of the Consent Judgment has been voluntarily paid by Nott and in fact, she has taken efforts to evade voluntary payment or the Trustee's involuntary collection efforts.

A. **Inter-Family Transfers**

   1. **Abis Property**

35. Nott purchased the Abis Property on October 10, 2012, for $630,000.

36. Within weeks of the involuntary bankruptcy filing, by Deed dated April 24, 2018 and recorded May 2, 2018, Jonathan was added as an owner of the Abis Property for $1.00 consideration.

37. By Deed dated May 15, 2020 and recorded May 27, 2020, Nott and Jonathan sold the Abis Property for $910,000 to Judith and Albert Morabia.

38. Nott is the only party listed as "seller" to the HUD Settlement Statement.

39. After payment of real estate taxes and tax liens, Nott netted approximately $91,215.24 from the sale of the Abis Property ("**Abis Sale Proceeds**").

40. The Abis Sale Proceeds were deposited in the attorney trust account of her long-time lawyer, Victor A. Deutch, Esq. of Deutch & Associates, LLC.

### 2. Current Residence

41. On September 29, 2020, Jonathan purchased his and Nott's current residence located at 646 Bray Avenue, Port Monmouth, New Jersey ("**Current Residence**"), for $580,000.

42. Upon information and belief, Jonathan, Nott and the Children Defendants reside at the Current Residence.

43. The Current Residence was listed for sale on March 29, 2024 for $824,900.

### 3. Oak Terrace Property

44. Upon information and belief, Nott and Jonathan had an ownership interest in the real property located at 100 Oak Terrace, Freehold Township, New Jersey ("**Oak Terrace Property**").

45. On July 25, 2018, Nott and Jonathan obtained a mortgage from Santander Bank in the principal amount of $212,000, secured by the Oak Terrace Property ("**Santander Mortgage**").

46. On June 2, 2021, Nott and Jonathan sold the real property located at 100 Oak Terrace, Freehold Township, New Jersey ("**Oak Terrace Property**") to Thomas Coyne for $440,000.

47. Upon information and belief, after satisfying the Santander Mortgage, the balance of the proceeds from the sale of the Oak Terrace Property were tendered to Jonathan and/or Nott ("**Oak Terrace Sale Proceeds**").

### 4. Other Transfers

48. Upon information and belief, Nott and Jonathan made various payments to, or for the benefit of, the Children Defendants for tuition, sport activities and other expenditures.

4864-7914-0027, v. 1

49. Upon information and belief, Blake was born in May 1997 and is currently twenty-six (26) years old. Blake attended the University of Delaware and obtained a Bachelors of Arts degree in 2019. Thereafter, he attended law school at New York Law School, and obtained his *juris doctorate* in 2023. Blake is currently employed as an associate with Weil, Gotshal & Manges LLP.

50. Upon information and belief, Emma was born in August 1999 and is currently twenty-four (24) years of age.

51. Upon information and belief, Sophie was born in February 2001 and is currently twenty-three (23) years of age. Upon information and belief, since 2019, Sophie has attended Emerson College ("**Emerson**") and is currently a graduate student at Emerson.

52. Upon information and belief, Rachel was born in March 2002 and is currently twenty-two (22) years of age. Upon information and belief, Rachel also attended Emerson and recently graduated.

53. Upon information and belief, Nott paid for the post-secondary education and related expenses of all of the Child Defendants utilizing the funds that she improperly received form the Debtor, thereby allowing the Child Defendants to receive an advanced education without the necessity of student loans.

B. **Defendants**

54. Upon information and belief, Jonathan is the husband of Nott and a resident of the State of New Jersey with an address at 646 Bray Avenue, Port Monmouth, New Jersey 07758.

55. Upon information and belief, Blake is the adult son of Nott and Jonathan with an address at 646 Bray Avenue, Port Monmouth, New Jersey 07758

4864-7914-0027, v. 1

56. Upon information and belief, Emma is the adult daughter of Nott and Jonathan with an address at 646 Bray Avenue, Port Monmouth, New Jersey 07758.

57. Upon information and belief, Rachel is the adult daughter of Nott and Jonathan with an address at 646 Bray Avenue, Port Monmouth, New Jersey 07758.

58. Upon information and belief, Sophie is the adult daughter of Nott and Jonathan with an address at 646 Bray Avenue, Port Monmouth, New Jersey 07758.

## JURISDICTION AND VENUE

59. This is a core proceeding brought pursuant to Fed. R. Bankr. P. 7001, 11 U.S.C. §§ 105, 544, 550, and 28 U.S.C. § 157(b)(2)(A), (H) and (O).

60. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(1).

## COUNT ONE
### Avoidance of Fraudulent Transfers Pursuant to 11 U.S.C. §§ 544 and 550 and N.J.S.A. § 25:2-25(b) and N.J.S.A. § 25:2-27
### (Against All Defendants)

61. The Trustee repeats and re-alleges the allegations set forth above as set forth at length herein.

62. The Debtor funded Nott's purchase of the Abis Property as documented in the Accounts Receivable.

63. On May 15, 2020, Nott sold the Abis Property and netted approximately $91,215.24, which represents the Abis Sale Proceeds.

64. On September 29, 2020, Jonathan purchased the Current Residence, solely in his name, for $580,000.

65. On June 21, 2021, Nott and Jonathan sold the Oak Terrace Property and received significant proceeds by way Oak Terrace Sale Proceeds.

9

66. The funds from the Accounts Receivable, Nott's interests in the Abis Sale Proceeds and Oak Terrace Sale Proceeds were transferred, utilized or dissipated by or for the benefit of the Defendants and to the detriment of the Debtor's bankruptcy estate.

67. Upon information and belief, the Abis Sale Proceeds and Oak Terrace Sale Proceeds were transferred by Nott to the Defendants and/or for their benefit, including to purchase the Current Residence.

68. Nott transferred her interest in the Abis Sale Proceeds and Oak Terrace Sale Proceeds to the Defendants within four (4) years from the filing of the within Complaint.

69. Upon information and belief, Nott transferred her interests in the Abis Sale Proceeds and Oak Terrace Sale Proceeds to the Defendants and to fund the purchase of the Current Residence, solely in Jonathan's name, with actual intent to hinder, delay, or defraud creditors.

70. Upon information and belief, Nott was insolvent at the time she transferred her interests in the Abis Sale Proceeds and Oak Terrace Sale Proceeds to the Defendants for, among other things, the purchase of the Current Residence by Jonathan.

71. Nott received less than reasonably equivalent value in exchange for the sale proceeds from the sale of the Abis Sale Proceeds for the purchase of the Current Residence by Jonathan, and the Oak Terrace Sale Proceeds.

72. Nott received less than reasonably equivalent value in exchange for the transfer of assets to for the benefit of all Defendants, including for vehicles, college tuition and law school tuition provided to the Child Defendants.

**WHEREFORE**, the Trustee demands judgment against the Defendants as follows:

 a. Avoiding any transfer by Nott to any of the Defendants as a fraudulent transfer pursuant to 11 U.S.C. § 544, N.J.S.A. § 25:2-25(a), N.J.S.A. § 25:2-25(b), and/or N.J.S.A. § 25:2-27;
 b. Granting such other and/or further remedy provided for pursuant to 11 U.S.C. § 550, including, entering judgment in the amount of the transfers to the Defendants and the use of the Abis Sale Proceeds for the Purchase of the Current Residence;
 c. Awarding attorneys' fees and costs; and
 d. Granting such other and further relief as is just and appropriate.

## COUNT TWO
### (Civil Conspiracy)

73. The Trustee repeats and re-alleges the prior allegations of her Complaint as if fully set forth at length herein.

74. Nott and Jonathan acted in concert to defraud the Debtor and its Estate by orchestrating a scheme to render Nott insolvent and avoid her then-existing and future financial obligations to the Debtor and its Estate, all to the detriment of the creditors of the Debtor ("**Scheme**").

75. The Scheme was enacted between Nott and Jonathan immediately after the Petition Date, and at a time when Nott knew she was being investigated by the Committee and the Trustee.

76. Nott and Jonathan intentionally enacted the Scheme so as to keep Nott's assets out of the reach of creditors of the Debtor.

77. The Debtor has and continues to suffer damages resulting from this civil conspiracy perpetrated by Nott and Jonathan.

**WHEREFORE**, the Trustee demands judgment against Jonathan as follows:

 a. for damages in an amount equal to any assets transferred by Nott to Jonathan or for his benefit, but in no way limited to, the Abis Sale Proceeds, Oak Terrace Sale Proceeds, any sale proceeds for the Current Residence, vehicles and other tangible assets;
 b. for compensatory damages, including post-judgment interest;
 c. for punitive damages;

      d. for costs of suit and reasonable attorneys' fees; and

      e. such other and further relief as the court deems just and proper.

## COUNT THREE
### (Imposition of Constructive Trust)

78. The Trustee repeats and re-alleges the allegations set forth in the preceding paragraphs as set forth at length herein.

79. The advances to Nott documented by way of the Accounts Receivable include the purchase of the Abis Property, vehicles and other items on behalf of or for the benefit of Nott and the various Defendants.

80. On September 29, 2020, Jonathan purchased the Current Residence which was funded, at least in part, from the Abis Sale Proceeds and other ill-gotten gains through funds advanced and documented as part of the Accounts Receivable.

81. The Deed for the Current Residence is titled solely Jonathan's name and was recorded with the Monmouth County Clerk's Office on March 4, 2021 in Deed Book 9486, Page 8582.

82. Upon information and belief, Jonathan did not contribute any funds towards the purchase of the Current Residence at the time of closing in September 2020.

83. Jonathan's ownership of the Current Residence and other assets purchased and/or transferred by Nott is inequitable and unjustifiable, solely intended to shield Nott from the Debtors' creditors.

84. At the time Jonathan purchased the Current Residence, Nott was already deposed by the Committee, and had received notice of the Trustee's deposition.

85. At all times during the relevant time period, Nott was aware that she was being investigated for, and had significant liability to the Debtor's bankruptcy Estate.

4864-7914-0027, v. 1

**WHEREFORE,** the Trustee demands judgment against Jonathan as follows:

a. Imposing a constructive trust on the sale proceeds for the Current Residence and any other assets of the Defendants, including those that are sold and transferred during the pendency of this adversary proceeding;

b. Awarding attorneys' fees and costs; and

c. Granting such other and further relief as is just and appropriate.

                                    **McMANIMON, SCOTLAND & BAUMANN, LLC**
*Counsel to Plaintiff, Andrea Dobin,*
*Chapter 7 Trustee*

Dated: May 7, 2024

By: */s/ Michele M. Dudas*
     MICHELE M. DUDAS

13

4864-7914-0027, v. 1